# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JOSHUA HAWKINS, | Case No.: 3:18-cv-00605-MMD-WGC |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF No. 20 |
| RUSSELL, et. al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 20, 20-1 to 20-14.) Plaintiff filed a response. (ECF No. 22.) Defendants filed a reply. (ECF No. 23.) Plaintiff filed a sur-reply in response to Defendants reply (ECF No. 24), which should be stricken because he did not seek leave of court to file the sur-reply in compliance with Local Rule LR 7-2(g).

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

When Plaintiff filed this action, he was an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) According to NDOC's inmate database, it appears that he was subsequently released on parole.

The court screened Plaintiff's complaint, and allowed him to proceed with a Fourteenth Amendment due process claim (against Johnson), a retaliation claim (against Peterman, Henley and Russell), and a State law negligence claim (against Johnson and Peterman), based on allegations that he was being taken to the Washoe County Detention Facility (WCDF) while he appeared for a re-sentencing and his property at NDOC was inventoried, but some of it was missing and not given back to him when he returned to NDOC. (ECF No. 3.)

Specifically, Plaintiff alleges that on July 27, 2018, he transferred from NDOC's Warm Springs Correctional Center (WSCC) to WCDF for re-sentencing. Correctional Officer Andersen (not a defendant) inventoried his property, and explained that it would be stored at WSCC pending Plaintiff's return from court. Plaintiff claims that the transfer property inventory receipt listed all of Plaintiff's property, including law work, documents, photos of family members, photos of a deceased son and brother, their obituaries, photos of his wife, his marriage certificate, his handwritten and typed manuscripts, clothing, shoes, sheets, cosmetics, commissary items and a television. Plaintiff returned to WSCC after his re-sentencing on December 7, 2018, and learned that Sergeant Johnson had discarded all of Plaintiff's property because he thought Plaintiff was a "new commitment." On December 10, 2018, Plaintiff sent Sergeant Peterman an inmate request form (known as a "kite") explaining he had been at court for re-sentencing and attached his legal documentation. On December 12, 2018, Sergeant Peterman delivered Plaintiff's kite back and said, "you aren't getting your property," "you aren't getting shit," and "matter of fact you can't even put a grievance on it because I went straight to the warden to make sure that you don't get shit!"

That day, Plaintiff filed a grievance, which he says was not duplicative of any prior grievance. On December 18, 2018, Henley called Plaintiff into his office and explained that

Plaintiff's grievances were improper. He said that the handwriting in the first grievance was too small, and the second grievance was duplicative. Henley directed Plaintiff to re-write the issues in their entirety and consolidate the grievances into one. Plaintiff complied, but on December 19, 2018, Henley told Plaintiff he was being written up for abuse of the grievance process, and that Plaintiff would continue to be written up if he attempted to put any grievances in on this issue.

The court allowed Plaintiff to proceed with the due process claim against Johnson based on the allegations that Andersen had authority to confiscate and inventory Plaintiff's property while he was transferred to WCDF, and Johnson seemed to think he was authorized to discard Plaintiff's property because he mistakenly thought Plaintiff was a new commitment.

Plaintiff was allowed to proceed with a retaliation claim against Peterman, Henley and Russell based on allegations that Plaintiff filed a kite about his missing property to Peterman, who told Plaintiff he could not put in a grievance because he had already talked to the warden (Russell) and would make sure Plaintiff did not get any of his property. In addition, Henley subsequently wrote Plaintiff up for abusing the prison grievance process.

Finally, the court allowed Plaintiff to proceed with a State law negligence claim against Johnson and Peterman based on allegations that they had a duty to safeguard Plaintiff's property while he was at court, and breached this duty when they discarded his property.

Defendants move for summary judgment, arguing: (1) there is insufficient evidence of the existence of the property or that NDOC employees lost property they were not obligated to store; (2) there is no evidence of retaliation; (3) Plaintiff cannot show breach, causation or damages to support his negligence claim; and (4) Defendants are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Due Process**

Plaintiff was allowed to proceed with a due process claim against Johnson based on the allegation that Johnson believed he was authorized to discard Plaintiff's property because he mistakenly thought Plaintiff was a new commitment.

The Due Process Clause protects prisoners from being deprived of property without due process of law. U.S. Const., amend XIV; *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prisoners have a protected interest in their personal property. *Shinault v. Hawks,* 782 F.3d 1053, 1057 (9th Cir. 2015) (en banc) (citation omitted); *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974).

An authorized, intentional deprivation of property is actionable under the Due Process; however, neither a negligent, nor an intentional but unauthorized deprivation of property is actionable if a meaningful post-deprivation remedy is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). An authorized deprivation is one carried out pursuant to established state procedures, regulations or statutes. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982); *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985).

According to Johnson, on July 27, 2018, Plaintiff was paroled, but released to custody of the WCDF because of an ongoing criminal proceeding there. Plaintiff's historical bed assignment states on July 27, 2018: "PAR-CNV" and "booking ended 11/21/18." (ECF No. 20-1 at 2.) Johnson asserts that Plaintiff was booked into the WCDF on a felony hold.

When Plaintiff was being moved, his property was inventoried by Officer Andersen and the property inventory sheet was signed by Plaintiff. (ECF No. 20-4.)

Johnson contends that while Plaintiff was in custody of the WCDF, his sentence for which he had been incarcerated within NDOC expired on September 14, 2018, but Plaintiff remained in custody of WCDF until he was sentenced in another case on November 16, 2018. On November 21, 2018, Johnson asserts that Plaintiff came back to NDOC as a "new commit" on his new sentence. As such, he was sent to Northern Nevada Correctional Center (NNCC) for intake processing. After that, he was sent back to WSCC on December 7, 2018.

Johnson argues that even assuming the allegations regarding authority and disposal of the property are true, there is insufficient evidence of the existence of the property because the inventory sheet does not list the property Plaintiff claims was discarded, such as the manuscript, family pictures or obituaries. Instead, Plaintiff's grievance, four months after he was paroled, lists the alleged missing items for the first time.

In addition, Johnson contends that Plaintiff was paroled and sent to the WCDF on a felony hold, and NDOC is not obligated to store inmate property while an inmate is on parole. Johnson further claims there is insufficient evidence that NDOC employees (*i.e.* Johnson) lost Plaintiff's property. He asserts that Plaintiff's grievance alleges that at least some of the allegedly missing property was returned to Plaintiff, which undermines Plaintiff's claim that the property was discarded.

Finally, Johnson argues that even if Plaintiff could establish he was missing property, his due process rights were not violated because Plaintiff could have had his property sent out.

Plaintiff, on the other hand, disputes that he was on parole and was a new commitment when he came back from WCDF and was informed some of his property was missing. According

to Plaintiff, he had previously entered a guilty plea in two separate cases, and in the latter case, he agreed in error that the sentences would run consecutively. Plaintiff indicates that he was sentenced on his first criminal case, CR15-1183, on October 15, 2015, and was given a sentence of three to eight years. Then, on September 28, 2016, he entered into a guilty plea agreement in his other criminal case, CR18-1717, where both parties agreed to recommend 36-90 months in prison, to run *consecutively* with his sentence in case CR15-1183. (ECF No. 22 at 14.) He subsequently discovered that it was illegal for these sentences to run *consecutively*, and he filed a motion with the State court to correct this on August 13, 2017, stating that he agreed to enter a guilty plea in exchange for the imposed sentence to run *concurrently* with his present NDOC sentence. (ECF No. 22 at 18)

Plaintiff states that on July 23, 2018, he was informed that he would be transferred to WCDF for the re-sentencing on July 27, 2018. At that time, Plaintiff sent Johnson a kite advising Johnson he was going to be transferred to Washoe County to be sentenced, and would return in 30-60 days. Plaintiff asked whether his property could be transferred to NNCC so he could get it when he returned from court. Johnson responded on July 24, 2018: "Your property will be kept in the institution until you return as you currently reside here." (ECF No. 22 at 20.)

According to Plaintiff, on July 27, 2018, he was transferred to WCDF as a "resolve and return." To support this, he submits his booking summary report for July 23, 2018, which has a handwritten note that says "parole to hold to resentence. Re-book in Washoe for Sparks case. Resolve and Return CR15-1183/CR17-1818." (ECF No. 22 at 22.)

On October 20, 2018, Plaintiff entered into a guilty plea agreement in case CR18-1717, agreeing to serve a recommended sentence of 39-60 months in prison, where the parties were free to argue for concurrent or consecutive treatment. (ECF No. 22 at 26.) There is a November

16, 2018, judgment in case CR18-1717 for the burglary charge and Plaintiff was sentenced to 90 months in prison, with a minimum parole eligibility date of 36 months, to be served *concurrently* with the sentence imposed in case CR15-1183, and Plaintiff would receive credit for 514 days of time served. (ECF No. 22 at 30.)

On November 21, 2018, Plaintiff states that he was transferred back to NDOC to NNCC. His inmate inventory transfer form has a notation of "court return" at the top. (ECF No. 22 at 33.) Plaintiff was subsequently transferred from NNCC to WSCC. (*Id.*)

On December 7, 2018, Plaintiff sent an inmate request form (known as a "kite") to Johnson, stating that he went to court three months prior to be re-sentenced per a global resolution, and upon his return he was missing his legal mail box, containing his transcripts, his habeas corpus documents, and pictures of his granddaughter, as well as his TV.  Johnson responded: "According to your records you were a new intake on 11/21/18. If you disagree with this, you'll need to address with your caseworker." (ECF No. 22 at 40.)

That same day, Plaintiff sent a kite to Henley, advising that he had returned from being re-sentenced, and his TV as well as a legal box with transcripts, habeas corpus documents and photographs of his granddaughter were missing. Henley responded that Plaintiff should handle casework through his caseworker; that Plaintiff discharged his parole on September 14, 2018, and was no longer in custody of NDOC; and, property issues are to be handled through property. (ECF No. 22 at 44.)

On December 10, 2018, Plaintiff sent another kite to Johnson, stating that he had kited Johnson back in July to explain he would be going to court to be re-sentenced, and when he arrived back at WSCC as a court return, his property was missing, including: a box with irreplaceable documents, family photos of his deceased brother and son as well as their

obituaries, his handwritten and hand-typed manuscript, photos of his granddaughter, legal work, a folder containing legal work and a TV. Johnson responded: "As discussed, you need to resolve your status (current or previous) within the NDOC w/ your caseworker." (ECF No. 22 at 41.)

Plaintiff also sent Peterman a kite, advising that he had returned from court after being re-sentenced, and his property was missing. He informed Peterman that Johnson had told him that Peterman confiscated his TV, and asked why and for assistance. Peterman responded: "You paroled to a hold. You are back on a new sentence. We do not store property for those situations. You will not receive your property back for your prior sentence." (ECF No. 22 at 43.)

The parties dispute whether Plaintiff was sent to WCDF after he was paroled and then expired his sentence while there and came back to NDOC as a "new commitment", or whether he was sent to WCDF for re-sentencing on a case he had previously been sentenced for, and then returned to NDOC. On the one hand, the inventory form Plaintiff signed before he went to WCDF is called an NDOC "Inmate Inventory *Transfer*." (ECF No. 20-4.) On the other hand, that form states that Plaintiff was being sent from WSCC to "PAR to Hold-Booking in WCDC" and the reason listed is "parole." (*Id*.)

In the event this can be viewed as a transfer, as is suggested by the form used to inventory Plaintiff's property, NDOC's Administrative Regulation (AR) 711 provides that when an inmate is temporarily transferred directly to jail for court, the property will be stored at the sending institution/facility. (ECF No. 20-3 at 4.) Even if Plaintiff were in fact on parole and expired his existing sentence while in WCDF, Johnson does not explain why he told Plaintiff that his property would be kept at WSCC until he returned.

Moreover, Johnson does not assert that at any time he, or anyone else at NDOC, notified Plaintiff that when he was sent to WCDF, whether on parole and for a hold on another case or for

re-sentencing as Plaintiff suggests, that he had any other options with respect to his property, i.e. to send it out, have someone pick it up, donate it to charity, etc. Instead, Johnson's communication with Plaintiff indicated that Plaintiff's property would remain at WSCC until he returned from WCDF. This is consistent with Plaintiff's statement in one of his grievance forms that he was never told or given the opportunity to do anything else with his property other than have it packed and inventoried and left at WSCC. (ECF No. 20-8 at 4.) Plaintiff's version of events is also corroborated by the fact that when he returned to WSCC, one of his bags of property was still there and was returned to him. (*See* ECF No. 20-8 at 4.)

Defendants argue that Plaintiff's argument is premised on unauthenticated evidence, *i.e.*, the kite and response from Johnson before Plaintiff left for WCDF; however, Plaintiff specifically states that he sent the kite to Johnson and Johnson responded. Moreover, Johnson does not contend that Plaintiff did not send him this kite, that he was not the one that responded, or that his signature does not appear on the kite. Under Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact *cannot be presented in a form that would be admissible in evidence.*" Fed. R. Civ. P. 56(c)(2). Here, Defendants argue that the kite is not presently authenticated, not that it could not be presented in a form that would be admissible. Therefore, to the extent this can be considered as an objection, it should be overruled.

Insofar as Johnson briefly argues there is no evidence anyone at NDOC got rid of the property, Johnson does not present any evidence that he was not responsible for the property loss or demonstrate *how* Plaintiff cannot establish this fact. Fed. R. Civ. P. 56(c)(1). Moreover, Johnson does not dispute he was the property sergeant such that he would have been responsible for disposition of property within WSCC.

Finally, insofar as the identification of property is concerned, Johnson's argument is essentially that Plaintiff acknowledges that he got some of his property back because his grievance states that he was given one bag of his property. Johnson also argues that the inventory list does not match the list of items Plaintiff now contends were not returned to him.

The "inmate inventory transfer" form lists 3 sheets, 1 pillow case, 1 towel, 1 hat, 1 pair of shoes, 7 socks, 1 pair of underwear, 1 do-rag, 1 pair of shower shoes, 1 pair of sweatpants, 1 sweatshirt, 3 beanies, 1 barber apron, 1 legal work folder, 1 hair brush, 1 comb, 1 deodorant, 1 toothpaste, 2 bowls with lids, 1 tumbler, 2 headphones, 1 headphone extension, 1 coax cable, and 1 TV. (ECF No. 20-4 at 2.)

There is a notation from Officer Hall (or possibly Hallings, as Plaintiff sometimes refers to him) from after Plaintiff returned from WCDF, that Plaintiff's TV and 1 folder of legal work were missing. (*Id*.) Defendants are correct that Plaintiff does not provide evidence regarding the items he now claims were missing. While Defendants contend that Plaintiff was given some of his property back, it is undisputed that the TV and the folder of legal work and its contents were missing when Plaintiff returned to WSCC. In one of his grievances, Plaintiff said that his personal photographs, documents, obituaries, and transcripts were in the missing folder. Therefore, there is at least a dispute of fact as to what property Plaintiff is missing. (ECF No. 20-8 at 5.)

In sum, Plaintiff has raised a genuine dispute of material fact as to whether he was missing property (i.e., a TV and a folder of legal work), and whether he was given due process with respect to his property that was taken pursuant to an intentional, authorized deprivation. Therefore, summary judgment should be denied as to the due process claim against Johnson.

The qualified immunity analysis consists of two steps: (1) viewing the facts in the light most favorable to the plaintiff, did the defendant violate the plaintiff's rights; and (2) was the right clearly established at the time the defendant acted. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017) ; *see also Hines v. Youseff*, 914 F.3d 1218, 1228-29 (9th Cir. 2019).

Here, viewing the facts in the light most favorable to Plaintiff, the trier of fact could find that Johnson violated Plaintiff's rights. If Johnson believed Plaintiff was paroled and came in as a new commitment and therefore, discarded Plaintiff's property because of NDOC policy not to store property of parolees, without advising Plaintiff he had the right to have his property sent out, or giving him another option to dispose of his property before it was discarded,  then a fact finder could reasonably find that Johnson violated Plaintiff's due process rights. Moreover, it was clearly established that a prison official could not intentionally discard an inmate's property pursuant to authorized, established policies, without affording the inmate due process. Therefore, Johnson is not entitled to qualified immunity.

**B. Retaliation**

Plaintiff was allowed to proceed with a retaliation claim against Peterman, Henley and Russell, based on allegations that Plaintiff filed a kite about his missing property to Peterman, and Peterman subsequently told Plaintiff he could not put in a grievance on the issue because he had already talked to the warden (Russell) and would make sure Plaintiff did not get any of his property. Then, Henley wrote Plaintiff up for abuse of the grievance process.

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a

claim consists of the following elements: "(1) An assertion that a state actor took some adverse

action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action

(4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v.*

*Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Defendants' motion focuses only the write-up by Henley for submitting a duplicative

grievance, and ignores the allegations as to Peterman and Russell; therefore summary judgment

should be denied as to those two defendants as they did not meet their burden.

With respect to Henley, the court will now discuss the evidence surrounding this claim.

Plaintiff filed an informal level grievance on December 10, 2018, assigned grievance

number 20063**075676**, stating that on July 26, 2018, Plaintiff sent a kite to Johnson letting him

know he was going to court on a "resolve & return." Upon returning on December 7, 2019, some

of his property was missing and not returned to him. (ECF No. 20-8 at 16.)

On December 11, 2018, Plaintiff submitted an informal level grievance, assigned

grievance number 20063**075953**. The first sentence of the grievance states: "This is not a

duplicate." Plaintiff stated that he was transferred to WCDF to be re-sentenced, and before he left

Johnson told him that his property would be stored at WSCC until he returned; however, when

Plaintiff returned, the property officers told him they only located one bag of property. He

claimed that some of his property was missing, and asked that it be replaced. (ECF No. 20-9 at 3-

4.) The grievance went on to state that on December 12, 2018, Peterman came to his unit to

deliver a response to a kite, and told Plaintiff he went to the warden and made sure Plaintiff

would not get his property back and that he was out on parole to a hold, which Plaintiff claimed

1   was in violation of his right to air his grievances. He said he had a right to grieve without

2   retaliation or targeting. (*Id*. at 5.)

3        Plaintiff was issued an improper grievance memorandum dated December 13, 2018, from

4   Associate Warden Shreckengost stating that the informal level grievance for grievance

5   200630**75676**, stating that it was not legible. Plaintiff was instructed to resubmit the informal

6   level grievance and complete form DOC-3026 for an inmate property claim. (ECF No. 20-8 at

7   15.)

8        On December 18, 2018, Plaintiff was issued an improper grievance memorandum by Ron

9   Shreckengost for grievance 200630**75953**, stating that it was a duplicate of grievance

10  200630**75676**, and it was considered an abuse of the inmate grievance procedure when an inmate

11  files a grievance that contains specific claims or incidents previously filed by the same inmate.

12  He was told that his issue would be addressed in grievance 200630**75676**. (ECF No. 20-9 at 2.)

13       Plaintiff filed a second informal level grievance on December 18, 2018, for grievance

14  200630**75676**, reiterating that he was sent to WCDF for re-sentencing on July 27, 2018, and

15  Johnson told him that his property would be stored at WSCC until he returned, but when he

16  returned his property was missing. In this iteration of his informal level grievance in

17  **20063075676,** Plaintiff added the allegation from grievance **20063075953** that Peterman came to

18  his unit on December 12, 2018, and told Plaintiff: "You aren't getting your property, you aren't

19  getting shit!" and "matter of fact you can't even put a grievance in on it, because I went straight

20  to the warden to make sure you don't get shit!" (ECF No. 20-8 at 11-14.)

21       Plaintiff was issued an improper grievance memorandum from Associate Warden Ron

22  Schreckengost, stating that the grievance continuation forms for the second informal level

23

grievance in grievance 20063075676 improperly exceed two pages. Plaintiff was instructed to resubmit a new informal level grievance restating the issue. (ECF No. 20-8 at 10.)

Plaintiff was issued a notice of charges for the duplicate grievances dated December 19, 2018. (ECF No. 20-10 at 2.) The charge was ultimately dismissed. (ECF No. 20-11 at 2.)

Plaintiff filed his third informal level grievance for grievance 20063075676 on December 26, 2018, again stating that he had been transferred to WCDF on July 27, 2018, to resolve a pending case, but when he returned some of his property was missing. Plaintiff said he had spoken to Johnson, who told him his property was misplaced or discarded because he was a "new commitment," which Plaintiff claimed was incorrect. In addition, Johnson had told him before he left that his property would remain at WSCC until he returned. He also repeated his assertions about Peterman coming to his unit and telling Plaintiff he would not get his property, and he would not even be able to grieve the issue. (ECF No. 20-8 at 7-9.)

J. Dutton responded to the informal level grievance (20063075676) on December 31, 2018, stating that Plaintiff that he was not transferred for court as claimed, but released on parole. While in the custody of WCDF, he expired his sentence for case CR15-1183 on September 14, 2018, but remained in custody at the WCDF awaiting the outcome of the felony hold. Then, on November 16, 2018, he was sentenced on case CR18-1717 to a term of 36-90 months for burglary. He was received by NDOC as a "new commit" on November 21, 2018. Plaintiff was advised that prior to his parole release, he should have mailed his property home or made arrangements for someone to pick it up after his release. He was further told that NDOC does not store property for inmates who leave on parole, and if the property were not mailed out or picked up, it would have been disposed of. (ECF No. 20-8 at 6.)

Plaintiff filed his first level grievance (2006307**5676**) on January 3, 2019, maintaining that he was not a "new commitment," but was re-sentenced on his other case to have that sentence run concurrently with the sentence from case CR15-1183. He reiterated that Anderson, who had inventoried his property, and Johnson, had both told him that his property would remain at WSCC until he returned, but he was still missing property.  (ECF No. 20-8 at 3-5.)

P. Russel responded to the first level grievance, reiterating Dutton's response to the informal level grievance. (ECF No. 20-8 at 2.)

Plaintiff filed a second level grievance (2006307**5676**), where he maintained that he was sent to court for a re-sentencing, and even though Johnson told him his property would be stored at WSCC, but it was missing when he returned. (ECF No. 20-2 at 3.)

J. Borrowman responded to the second level grievance (**20063076676)** on February 15, 2019. Plaintiff was told that records reflected that he filed two grievances on this issue, this one, and grievance 2006307**5953**, and as a result he received a notice of charges. The response goes on to state that Plaintiff returned to NDOC as a "new commit", and according to the property room records, upon entering NDOC on November 21, 2018, he did receive some of his property. The response concluded with the statement that NDOC does not store property for inmates that leave on parole, and Plaintiff's property should have been mailed out before he left. (ECF No. 20-2 at 2.)

Administrative Regulation (AR) 740 states that it is abuse of the inmate grievance process when, among other things, an inmate files a grievance that contains specific claims or incidents previously filed by the same inmate or contains more than two grievance continuation forms. (ECF No. 20-12 at 7.) It is also an abuse of the grievance process to file a grievance with

more than two continuation forms per grievance. (*Id*.) These violations may subject an inmate to a notice of charges. (*Id*.)

Defendants argue that the notice of charges was issued by Henley because Plaintiff submitted a duplicative grievance, which was in conformity with AR 740, and there is no evidence of retaliation.

Plaintiff claims that the second grievance was about Peterman's conduct, and when he included the issue about Peterman's conduct in the next iteration of the informal level grievance in grievance 200630**75676**, that is when Henley wrote him up for the notice of charges.

Henley's report in the notice of charges states that on December 18, 2018, Henley gave Plaintiff two separate improper grievance forms for grievances 200630**75676** and 200630**75953**, and explained to Plaintiff that he filed two grievances for the same issue and that was a violation of the rules regarding the grievance process. This statement in Henley's report is corroborated by the improper grievance memorandum in grievance 200630**75676** that Plaintiff signed for on December 18, 2018, where Plaintiff was told that his grievance had to be legible and he was to re-submit it at the informal level. (ECF No. 20-8 at 15.) The other improper grievance memorandum that date was the one issued in grievance 200630**75953**, finding that the grievance was duplicative of grievance 200630**75676**. (ECF No. 20-9 at 2.) In the notice of charges, Henley said that he explained to Plaintiff how to properly fill out his grievance for it to be successful. Then, on December 19, 2018, Henley said that he collected inmate grievances and was informed that Plaintiff had attached four continuation forms to his re-submitted grievance (for grievance 200630**75676**) which is also an abuse of the grievance process under AR 740. As such, Plaintiff was issued the notice of charges. (ECF No. 22 at 58.)

1    Plaintiff claims that the 200630**75953** grievance was not a duplicate, and it was about

2    Peterman's misconduct. A review of the 200630**75953** grievance, however, reveals that not only

3    does it discuss Peterman's conduct, but spends a good deal of time discussing the missing

4    property, and like the 200630**75676** grievance, it requested replacement of the property as a

5    remedy, in addition to being able to file grievances in the absence of retaliation. Therefore, it was

6    reasonable to deem the grievance duplicative. The evidence further demonstrates that Plaintiff

7    was written up not in retaliation for filing a grievance, and not even in the first instance for filing

8    a duplicative grievance, but because after he was told he needed to follow AR 740, he filed

9    another grievance in violation of the regulation when his re-submitted his grievance with  an

10   excessive number of continuation forms. Moreover, Henley did not tell Plaintiff he could not

11   grieve Peterman's conduct, but instead, that the issues should be consolidated into one grievance.

12   In fact, Plaintiff did repeat his assertions regarding Peterman's conduct in the third iteration of

13   his informal level grievance  in grievance 20063075676 (ECF No. 20-8 at 8), and Plaintiff was

14   permitted to re-submit his grievance and eventually proceeded through all levels for grievance

15   200630**75676**.

16   Plaintiff's claim of retaliation against Johnson is based entirely on speculation and it not

17   supported by any evidence in the record. Therefore, summary judgment should be granted with

18   respect to the retaliation claim against Johnson.

19   **C. Negligence**

20   While the court initially allowed Plaintiff to proceed with his State law negligence claim

21   on screening, the court has reviewed this claim further and has determined that it should be

22   dismissed from this action without prejudice. This is because in order to sue an employee of the

23   State of Nevada or one of its political subdivisions for an act or omission occurring with the

1  scope of that person's employment, the State or appropriate political subdivision must be named

2  a party defendant under Nevada Revised Statute (NRS) 41.031. NRS 41.0337(1). The State of

3  Nevada has generally waived sovereign immunity for State tort actions brought in *State court*,

4  NRS 41.031(1); however, the State of Nevada has not waived its immunity from suit conferred

5  by the Eleventh Amendment to the United States Constitution with respect to actions brought in

6  *federal court*. NRS 41.031(3). Generally, the State of Nevada and arms of the state cannot be

7  sued in federal court.  *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) (holding

8  that "Nevada has explicitly refused to waive its immunity to suit under the eleventh amendment .

9  . . The Supreme Court has made it clear that section 1983 does not constitute an abrogation of the

10  eleventh amendment immunity of the states"). In *Stanley v. Trustees of California State Univ.*,

11  433 F.3d 1129, (9th Cir. 2006), the Ninth Circuit held that 28 U.S.C. § 1367 does not abrogate

12  state sovereign immunity for supplemental state law claims. *Id.* at 1133-34.  Although the State

13  of Nevada may consent to federal court jurisdiction for state law claims through removal, this is

14  not a removed case.  *See e.g. Perez v. State of Nevada*, 2:15-cv-01572-APG-CWH, 2016 WL

15  4744134, at *4 (D. Nev. Sept. 12, 2016); *Weidner v. Nevada*, 2:16-cv-02301-KJD-NJK, 2017

16  WL 5985563, at *2 (D. Nev. Nov. 30, 2017).

17    Where the State of Nevada is an indispensable party (such as under NRS 41.0337), the

18  federal court does not have supplemental jurisdiction over the state law tort claim because it does

19  not have jurisdiction over the indispensable party—the State. *See Hirst v. Gertzen*, 676 F.2d

20  1252, 1264 (9th Cir. 1982) (holding that, where Montana law deemed governmental entities

21  indispensable parties in a state tort claim against a state employee, the federal court had no

22  supplemental jurisdiction over the state tort claim if it had no jurisdiction over the indispensable

23  party).

Therefore, Plaintiff's negligence claim should be dismissed from this action without prejudice so that he can raise it, if he desires, in State court by naming the appropriate parties.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **STRIKING** Plaintiff's sur-reply (ECF No. 24) because Plaintiff did not seek leave of court to file the sur-reply in compliance with Local Rule LR 7-2(g);

(2) **OVERRULING** Defendants' objection to Plaintiff's evidence, to the event their argument can be construed as an objection; and

(3) **GRANTING IN PART AND DENYING** in part Defendants' motion for summary judgment (ECF No. 20) as follows:

(A) **DENYING** summary judgment as to the due process claim against defendant Johnson;

(B) **DENYING** summary judgment as to the retaliation claim against Peterman and Russel, and **GRANTING** summary judgment as to the retaliation claim against Henley;

(C) **DISMISSING WITHOUT PREJUDICE** the State law negligence claim.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

        2. That this Report and Recommendation is not an appealable order and that any notice of

appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

until entry of judgment by the district court.


Dated: May 7, 2021

                                                    _____
                                                    William G. Cobb
                                                    United States Magistrate Judge